His Honor found the following facts:
"1. That S. D'Anna and May Murrill were married in this State in the year 1883, and there were born to them of this union two children, Victor, eleven years of age, now in the custody of his father in Kentucky, and Hugh, seven years of age, now in the custody of his mother, temporarily in North Carolina, but a resident of Washington City, D.C.
"2. That on 22 June, 1893, in the courts of the State of Kentucky, a divorce was granted to Mrs. D'Anna, now Mrs. Thompson, but that in said divorce proceedings no order was made in regard to the custody of either of the said children.
"3. That the children were in possession of either parent, without objection on the part of either, until shortly before the decree of divorce. They have not been in the possession of Mrs. Thompson since the said decree, she having shortly prior thereto returned said children to said D'Anna on account of her financial inability at that time to take care of them.
"4. That said children remained in his custody ever since, until October, 1895, when Mrs. D'Anna (then Mrs. Thompson) went to the school in Hickory, N.C. where Hugh D'Anna had been placed by instruction of his father, and then and there took the said child away from said school, for the purpose of taking him to Washington City, D.C.
"That she refused to surrender possession of said child, and that a writ of habeas corpus in this matter was sued out by plaintiffs, Alice Murrill and S. D'Anna. *Page 317 
"5. That by advice of physician the father S. D'Anna, placed the infant Hugh in Hickory, N.C. for the benefit of his health, in care of his step-grandmother, and later in school at that place, the child still boarding with his step-grandmother, the father, S. D'Anna, (464) residing at Lexington, Ky.
"That since being placed there his health has been much improved, and he is in every way well cared for.
"6. That S. D'Anna is a man of character and education — makes about two thousand dollars a year, and is in every way suitable, competent and capable to provide for the infant Hugh and to give him a liberal education.
"7. That some time in the year 1894 Mrs. D'Anna intermarried with one C. P. Thompson, who is a drunkard and gambler, and, though possessed of large means, is a spendthrift.
"That Mrs. Thompson has personal property in her own right sufficient to take care of the children, but said property has been settled upon her by Mr. Thompson.
"That Mrs. Thompson is a woman of high character, but on account of the drinking and gambling habits of her present husband, is not a fit and suitable person to have the care and custody of the said child, and it would be against the best and highest interest of said child for her to have the care and custody thereof.
"Wherefore, it is considered and ordered and adjudged by the court:
"1. That said infant, Hugh D'Anna, be surrendered to the custody and control of his father, S. D'Anna.
"2. That the said D'Anna shall not within two years remove the said child from this State or out of the jurisdiction of this court.
"3. That the mother, Mrs. Thompson, shall have access to said child and shall visit him when she desires and sees fit; and upon her application, and upon payment to him of his fees, it will be the duty of the Sheriff of Catawba County to take her to the said child, and at such times she shall only be under such restraint as may be (465) necessary to keep the child in the jurisdiction of this court.
"4. That Mrs. Thompson shall have the right to make, at any time within one year after the date hereof, for cause then to be shown, application to the resident Judge of the Tenth Judicial District or the Judge holding the court thereof, to have the care and custody of the said child transferred from Mr. D'Anna to herself, and thirty days notice of said application on the person in whose control or possession the said child may be at the time shall be sufficient notice to the said S. D'Anna; and in case the said child is hereafter removed from the State, so that personal service of notice cannot be made, then publication of a notice for thirty days in some paper in Hickory shall be sufficient. *Page 318 
"That if the said Mrs. Thompson shall attempt to take possession of the said child without due process of law, then so much of this judgment as allows her to see said child shall be void."
Mrs. C. P. Thompson excepted to so much of said judgment as ordered her to surrender the custody and control of Hugh D'Anna, and to so much thereof as refused to award her the care and custody of said infant, and to so much thereof as awarded the care and custody thereof to the said S. D'Anna.
Exception overruled. Appeal prayed and granted to the Supreme Court.
This matter was heard before Judge Timberlake
in habeas corpus proceedings. The father of the child, who was once the husband of the respondent, appears from the findings of fact (466) by his Honor to be a man of character and education, with a good income, and in every way suitable, competent and capable to provide for the child and to give him a liberal education. The mother of the child, who is now married to one C. P. Thompson, also appears from the Judge's findings to be a woman of high character. His Honor finds, however, as a fact that the present husband of the child's mother is addicted to the vicious habits of both drinking and gambling, the former to great excess, and concluded that it would not be for the best interests of the child to place him in the same household with the man. The judgment of his Honor awarded the custody of the child to the father. In the judgment certain privileges of visiting the child were allowed to the mother, and certain restrictions put upon the father as to the removal of the child from this State. That part of the judgment which restricts the mother to one year in which to make application to the courts for the transfer of the care and custody of the child from the father to herself is modified so as to give her that right at any time while the child may be in the jurisdiction of the courts of this State, for the present condition of affairs may not always continue. Upon the surface, his Honor's ruling may appear to make of the mother a vicarious sacrifice for the sins of another, but its foundation is the law of the land, which, as well as the moral law, oftentimes requires such offerings to be made.
The judgment of his Honor is affirmed in all respects, except as herein modified.
Modified and affirmed.
Cited: McDonald v. Morrow, 119 N.C. 674; In re Jones, 153 N.C. 317. *Page 319 
(467)